UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 07-22396-CIV-MORENO

U.S. COMMODITY FUTURES TRADING
COMMISSION,

    Plaintiff,

vs.

JOERG HEIRLE, an individual; and INH-INTERHOLDING SA, a Swiss corporation, and FUTURES TRADING ACADEMY, INC., a Florida Corporation,

    Defendant.
_____/

**ORDER OF DEFAULT JUDGMENT WITH PERMANENT INJUNCTIVE RELIEF, RESTITUTION, CIVIL MONETARY PENALTIES AND OTHER ANCILLARY EQUITABLE RELIEF AGAINST DEFENDANTS JOERG HEIERLE AND INH-INTERHOLDING SA**

THIS CAUSE came before the Court upon the Motion for Leave to File Revised Affidavit **(D.E. No. 37)**, filed on **September 26, 2008**.

On September 12, 2007, the Commodity Futures Trading Commission ("Commission" or "Plaintiff") filed a Complaint charging defendants Joerg Heierle ("Heierle") and INHInterholding SA ("INH") (collectively, "Defendants") with violating Sections 4b(a)(2)(i)-(iii), 4c(b), 4k(2), 4m(1) and 4o(1) of the Commodity Exchange Act ("Act"), as amended, 7 U.S.C. §§ 6b(a)(2)(i)-(iii), 6c(b), 6k(2), 6m(1) and 6o(1) (2002), and Commission Regulations ("Regulations") 4.20(a)(1) and (b), 4.21, 4.22 and 33.10, 17 C.F.R. §§ 4.20(a)(1) and (b), 4.21, 4.22 and 33.10 (2007). The Commission's Complaint also names Futures Trading Academy, Inc. ("FTA") as a relief defendant.

On September 18, 2007, the Court granted Plaintiff's Motion for a Statutory Restraining

Order that, among other things, authorized the freezing of assets held in the name of or under the control or management of the Defendants and FTA. On March 17, 2008, the Court granted Plaintiff's motion and entered a Preliminary Injunction Order. On June 19, 2008, the Court entered a Supplemental Order of Preliminary Injunction enjoining Defendants and FTA from, among other things, further violations of the Act and Regulations, as charged in the Complaint. On October 24, 2007, Defendants and FTA were properly served with the Complaint pursuant to Rules 4(e)(2)(C) and 4(h)(1)(B) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). Defendants and FTA failed to appear or answer the Complaint within the time permitted by Fed. R. Civ. P. 12(a)(1). Accordingly, on July 24, 2008, the Clerk of this Court entered a default against Defendants and FTA for this Complaint.

The Court has carefully considered the Complaint, the allegations of which are wellpleaded and hereby taken as true, the Affidavit of Commission Futures Investigator Kara L. Mucha and other written submissions of the Commission filed with the Court, and being fully advised, hereby enters findings of fact, conclusions of law, a permanent injunction, restitution, civil monetary penalties and ancillary equitable relief pursuant to § 6c and §6d of the Act, 7 U.S.C. § 13a-1 (2006), as set forth herein.

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. FINDINGS OF FACT

1. Plaintiff U.S. Commodity Futures Trading Commission is an independent federal regulatory agency that is charged with the administration and enforcement of the Act, 7 U.S.C. §§ 1 et seq. (2006), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 et seq. (2008).

2. Defendant Joerg Heierle is an individual whose last known place of residence is Miami Beach, Florida. He was engaged in the business of soliciting individuals to participate in commodity pools and other managed accounts to trade commodity futures and options. Heierle accepted funds from prospective pool participants to trade on their behalf in the commodity futures and options markets. He registered with the Commission as a commodity trading advisor ("CTA") on October 4, 2005, but withdrew his registration on January 4, 2007. Pursuant to a May 16, 2007 National Futures Association ("NFA") Member Responsibility Action, Heierle's NFA membership has been suspended.

3. Defendant INH-Interholding SA was incorporated in Switzerland on December 1, 1982 and has two principal places of business located at 1210 Washington Avenue, Suite 212, Miami Beach, FL 33139 and 15 McMurrich Street, Suite 1103, Toronto, ON M5R 3M6. Heierle was the apparent sole manager of INH. INH maintained a presence on the Internet at www.interholding.net. In addition to conducting business under its own name, INH has also conducted business under the name BBWL Ltd. ("BBWL"). INH has never been registered with the Commission in any capacity.

4. Relief defendant Futures Trading Academy, Inc. was incorporated in Florida on February 6, 2001 and had its principal place of business at 1174 102nd St, Bay Harbour, Fl 33154. FTA registered with the Commission as an introducing broker on June 19, 2002, but withdrew its registration on September 24, 2003. Heierle held himself out as the co-founder, coowner, and president of FTA. FTA maintained a presence on the Internet at www.ftacademy.com. FTA has received funds of pool participants that were defrauded by Defendants and held those funds in constructive trust for the benefit of pool participants.

5. Since at least September 2000, Heierle solicited and accepted funds from pool participants

and purportedly traded commodity futures and options on their behalf through the INH commodity pools. Heierle was, at all relevant times herein, the apparent sole manager of INH.

6. Heierle solicited prospective pool participants in the name of INH using the INH website, personal solicitations and the efforts of existing pool participants who spread the news to friends and family of their profitable investments with Defendants.

7. Heierle directed prospective pool participants to the INH website and in particular to the returns he had posted on the website for three INH investment products: INH Strategic, INH Momentum, and INH Tertium (collectively, "INH pools"). The INH website claimed that from 2003 to 2005, the INH pools were consistently profitable with annual returns between 9.8% and 30.2% and that for the first quarter of 2007 the INH pools outperformed the Dow Jones, S&P 500 and NASDAQ indices.

8. Heierle promoted himself as an experienced and successful trader of commodity futures and options. In his direct solicitations, Heierle represented to certain prospective pool participants that the INH pools earned between 3-4% per month.

9. Heierle encouraged hesitant prospective pool participants to initially invest a small amount of money, monitor that investment, and then invest more money if the initial investment posted profitable returns - which it almost always did. Further, by way of example, in July 2006, Heierle convinced a reluctant prospective pool participant to make a relatively small initial investment of $35,000 in an INH pool and retain the bulk of his available funds pending the profitable performance of his initial investment. After Defendants posted six consecutive months of positive returns in the pool participant's INH website account summary, the pool participant invested another $80,000 in the INH pools.

10. In his oral solicitations of prospective pool participants where he claimed great success in trading commodity futures and options, Heierle failed to disclose adequately the risks associated with trading commodity futures and options.

11. Heierle failed to provide prospective pool participants with a Disclosure Document containing the information required by Regulations 4.24 and 4.25, 17 C.F.R §§ 4.24 and 4.25 (2007). Further, Heierle never obtained signed and dated acknowledgements from pool participants stating that they had received a Disclosure Document.

12. As a result of his fraudulent solicitations, from at least September 2000 to April 2007, Heierle, either in his name or in the name of INH, BBWL or FTA, received at least $4,367,206 from at least 25 individuals, for the purpose of trading commodity futures and options in INH pools on their behalf. The majority of the known pool participants' investments and re-investments in the INH pools occurred between July 2005 and April 2007.

13. Defendants' pool participants are located throughout the world, including Australia, Israel, Italy, Switzerland, the United Kingdom, and the United States.

14. Heierle directed pool participants to wire funds directly to bank accounts held by him, INH, BBWL or FTA. Heierle directed pool participants unable to wire funds to send him checks made payable to FTA.

15. At all relevant times herein, FTA was a purported on-line educational program for investors interested in trading commodity futures and options. Heierle was a founder and president of FTA. FTA provided no legitimate services and does not have any legitimate interest or entitlement to the funds of the pool participants.

16. Regardless of the designated recipient of pool participant funds, Heierle informed most

of the pool participants that their funds would be invested in an INH pool.

17. Through the INH website and other means, Defendants informed pool participants that Defendants would earn management and operating expenses of 2%, and performance fees of 20% on any profits made from Defendants' trading of their pooled funds.

18. In deciding to invest with Defendants, pool participants relied upon Defendants' oral and written material misrepresentations and omissions concerning their past trading success, the returns of the INH pools and the risks associated with trading commodity futures and options. Defendants knowingly or recklessly made those material misrepresentations and omissions to induce individuals to invest with them.

19. Since at least October 2001, Heierle opened and maintained numerous commodity futures and options pooled accounts in his name and jointly with another individual, a former principal and employee of FTA. Heierle also opened and maintained numerous commodity pool trading accounts in the name of other commodities related entities that he controlled or managed: BBWL; FTA; Eiger Investment Group, Inc.; Prime Value Investments, S.A.; and Pinnacle Trading Limited. There are no known commodity futures and options trading accounts held in the name of INH or any of the INH pools.

20. Heierle had trading authority over all the known commodity futures and options trading accounts identified herein.

21. From at least January 2002 through May 2007, Heierle's trading of participants' funds in accounts held in his name or that of BBWL or FTA sustained overall net trading losses of $985,357.

22. Defendants posted the INH pools' returns on the INH website. Defendants also posted

pool participants' returns on individual INH website account summaries which pool participants could access on-line. Defendants posted returns on the account summaries on a monthly basis.

23. The pool participants' website account summaries provided the individual pool participant's profits, losses, deposits, withdrawals and balances, but they did not reference any fees or commissions charged by Defendants.

24. With minor exception, the returns Defendants posted for the INH pools and the pool participants' account summaries falsely represented that Defendants were profitably trading on behalf of the pool participants and generating positive returns for every month.

25. In reality, Heierle's trading of commodity futures and options in all the known trading accounts he controlled resulted in significant losses. Indeed, there was a vast disparity between the profits that Defendants posted on the INH website and the losses sustained by the commodity trading accounts Heierle held, controlled or managed. For example, the INH website claimed that the three INH pools generated returns of 12.1%, 17.3% and 30.2% in 2005. However, for accounts held in his name or that of FTA, Heierle sustained net trading losses in 2005, losses that totaled approximately $80,000 for all of the trading accounts.

26. Defendants' posting of false profitable returns and account statements caused existing pool participants to invest additional funds with Defendants and to persuade others to invest with them.

27. From September 2003 to April 2007, Defendants returned $306,008 to pool participants as purported profits.

28. The amount of money solicited by Defendants and not lost in trading or returned to participants is $3,075,841.

29. Commencing in April 2007 and continuing to the present, pool participants have demanded the return of some or all of their funds invested with Defendants. Pool Participants have not received any funds in response to their demands and have not been able to contact Heierle since April 2007.

30. Defendants knowingly or recklessly issued or caused to be issued the false statements to pool participants concerning the profitability of Defendants' trading on their behalf.

31. Heierle acted as the apparent sole manager of INH. He held himself out as the manager of INH at all relevant times including but not limited to when he solicited and accepted funds for investment in the INH commodity pools.

32. As the apparent sole manager of INH, Heierle exercised control over the day-today business operations of the corporate Defendant. He directed the wire transfer of customer money into its bank accounts, and he was responsible for the content on the INH website.

**B. CONCLUSIONS OF LAW**

1. Defendants violated of Sections 4b(a)(2)(i) and (iii), 4c(b) and 4o(1) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii), 6c(b) and 6o(1) (2002), and Regulations 33.10(a) and (c), 17 C.F.R. § 33.10(a) and (c) (2007), by fraudulently soliciting prospective and existing pool participants to participate in commodity futures and options pools.

2. Defendants violated Sections 4b(a)(2)(ii) and 4c(b) of the Act, 7 U.S.C. §§ 6b(a)(2)(ii) and 4c(b) (2002), and Regulation 33.10(b), 17 C.F.R. § 33.10(b) (2007), by fabricating and issuing, and/or causing the fabrication or issuance, of false statements to commodity pool participants reflecting profitable trading of commodity futures and options on behalf of the pool participants.

3. In soliciting and accepting funds from individuals for the purpose of pooling the funds and

trading commodity futures and options, INH was acting as a commodity pool operator ("CPO"), as defined by Section 1a(5) of the Act, 7 U.S.C. § 1a(5) (2002), and Heirele was acting as an associated person ("AP") of INH, as defined by Commission Regulation 1.3(aa)(3), 17 C.F.R. § 1.3(aa)(3).

4. INH violated Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2002), by using the mails or means or instrumentality of interstate commence in connection with its business as a CPO without being register as a CPO as required, and Heierle violated Section 4k(2) of the Act, 7 U.S.C. § 6k(1) (2002), by failing to register as an AP of a CPO as required.

5. INH, as a CPO, violated Regulations 4.20(a)(1) and (b), 4.21 and 4.22, 17 C.F.R. §§ 4.20(a)(1) and (b), 4.21 and 4.22 (2007), by: failing to operate the INH pools as separate legal entities; failing accepting funds from pool participants other than in the names of the INH pools; failing to provide appropriate Disclosure Documents and Account Statements to pool participants; and receiving funds from pool participants prior to receiving signed acknowledgements that the pool participants had received a Disclosure Document for the respective INH pool.

6. With the aforementioned practices, Heierle is liable for INH's violations of the Act and Regulations pursuant to Section 13(b) of the Act, 7 U.S.C. § 13c(b) (2002), by acting as the controlling person of INH and knowingly inducing the acts underlying INH's violations or failing to act in good faith.

7. With the aforementioned practices, INH is liable for Heierle's violations of the Act and Regulations, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. § 2(a)(1)(B) (2002) and Regulation 1.2, 17 C.F.R. § 1.2 (2007), because the acts constituting Heierle's violations occurred within the scope of his position as an officer, agent or employee of INH.

8. This Court has subject matter jurisdiction over this action and the allegations in the

Complaint pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006).

9. This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action against such person to enjoin such practice or to enforce compliance with the Act.

10. Section 6c(d)(1) of the Act, 7 U.S.C. § 13a-1 (2006), and Regulation 143.8, 17 C.F.R. § 143.8 (2007), further provide that the Commission may seek, and a district court of the United States shall have jurisdiction to impose, a civil monetary penalty in the amount of not more than the greater of i) triple the monetary gain to the person for each violation, or ii) $110,000 for violations committed between November 27, 1996 and October 22, 2000, $120,000 for violations committed between October 23, 2000 and October 22, 2004, or $130,000 for violations committed on or after October 23, 2004;

11. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2002), in that Defendants transact business in this District, and the acts and practices in violation of the Act have occurred, are occurring, or are about to occur, within this District, among other places.

12. Permanent injunctive relief is warranted in light of the egregious nature and scope of Defendants' fraudulent conduct and their high level of scienter. These facts demonstrate a reasonable likelihood of future violations.

13. Imposition of civil monetary penalties is appropriate in this case because Defendants' violations of the Act and Regulations were intentional.

## II. ORDER FOR RELIEF

**A. PERMANENT INJUNCTION**

IT IS HEREBY ORDERED that:

    1. Defendants, in or in connection with any order to make, or the making of, any contract of sale of any commodity:

        A.    in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person, or

        B.    for any person for future delivery, or other agreement, contract, or transaction subject to paragraphs (1) and (2) of Section 5a(g) of the Act, that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market,

are each permanently restrained, enjoined and prohibited from directly or indirectly: cheating or defrauding or attempting to cheat or defraud the other person; willfully making or causing to be made to the other person any false report or statement or willfully entering or causing to be entered for the other person any false record; and/or willfully deceiving or attempting to deceive the other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of subparagraph (B) above, with the other person in violation of Section 4b(a)(2) of the Act, as amended by The Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, § 13102, 122 Stat. 1651 (to be codified at 7 U.S.C. § 6b(a)(2));

    2. Defendants are permanently restrained, enjoined and prohibited from directly or

indirectly:

    A.    in or in connection with an offer to enter into, the entry into, the confirmation of, the execution of, or the maintenance of any commodity options transaction,

        1.    cheating, defrauding, or deceiving or attempting to cheat, defraud, or deceive, any other person, and

        2.    making or causing to be made to to any other person any false report or statement thereof or caused to be entered for any person any false record thereof in violation of Section 4c(b) of the Act, 7 U.S.C. § 6c(b) (2002), and Regulations 33.10(a), (b) and (c), 17 C.F.R. §§ 33.10(a), (b) and (c) (2008).

    B.    while acting as a CPO and associated person thereof, using the mails or other means or instrumentalities of interstate commerce, to employ a device, scheme or artifice to defraud any clients or participants, or prospective clients or participants or engage in a transaction, practice or course of business which operates as a fraud or deceit upon any clients or participants or prospective clients or participants, in violation of Sections 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6o(1)(A) and (B) (2006).

    C.    using the mails or instrumentalities of interstate commerce in or in connection with his business as a CPO while failing to register with the Commission as a CPO, in violation of Section 4m(1) of the Act, 7 U.S.C. § 6m(1) (2006).

    D.    soliciting prospective participants on behalf of a CPO to participate in a pool or supervising any person or person so engaged while failing to register as an AP of a CPO, in violation of Section 4k(2) of the Act, 7 U.S.C. § 6k(2) (2006).

E.  while acting as a CPO, (1) failing to operate the pool as a separate legal entity from the CPO, and (2) accepting pool participant funds not in the name of the pool, in violation of Regulations 4.20(a)(1) and (b), 17 C.F.R. §§ 4.20 (a)(1) and (b) (2008).

F.  while acting as a CPO, failing to furnish Disclosure Documents to pool participants and/or accepting or receiving funds from a prospective pool participant prior to receiving a signed and dated acknowledgment from the prospective pool participant that stating that the prospective pool participant received a Disclosure Document for the pool, in violation of Regulation 4.21, 17 C.F.R. § 4.21 (2008)

G.  while acting as a CPO, failing to furnish monthly account statements to pool participants, in violation of Regulation 4.22, 17 C.F.R. § 4.22 (2008).

3. Defendants are permanently restrained, enjoined and prohibited from engaging directly or indirectly in any activity related to trading in any commodity, as that term is defined in Section 1a(4) of the Act, 7 U.S.C. § 1a(4), ("commodity interest"), including but not limited to the following:

A.  Trading on or subject to the rules of any registered entity, at that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29);

B.  Engaging in, controlling or directing the trading for any commodity interest account for or on behalf of any other person or entity, whether by power of attorney or otherwise;

C.  Soliciting, receiving, or accepting any funds from any person in connection with the purchase or sale of any commodity interest contract;

D.  Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration

or exemption from registration with the Commission, except as provided for in Regulation 4.14 (a)(9), 17 C.F.R. § 4.14(a)(9) (2008), or acting as a principal, agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission, except as provided for in Regulation 4.14 (a)(9), 17 C.F.R. § 4.14(a)(9) (2008);

E.   Entering into any commodity interest transactions for their own personal accounts, for any account in which they have a direct or indirect interest and/or having any commodity interests traded on their behalves; and/or

F.    Engaging in any business activities related to commodity interest trading.

4. The injunctive provisions of this Order shall be binding on Defendants, upon any person insofar as he or she is acting in the capacity of officer, agent, servant, employee or attorney of Defendants, and upon any person who receives actual notice of this Order by personal service, facsimile or otherwise insofar as he or she is acting in active concert or participation with Defendants.

**B. RESTITUTION**

IT IS FURTHER ORDERED that:

1. Defendants shall pay, jointly and severally, restitution in the amount of $3,075,841, plus post-judgment interest ("Restitution Obligation"), representing participant funds not lost in trading or returned to participants.

2. Post-judgment interest on the Restitution Obligation shall accrue commencing on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

3. Appointment of Monitor: To effect payment by Defendants and the distribution of restitution, the Court appoints the National Futures Association ("NFA") as Monitor. The Monitor shall collect restitution payments from Defendants and make distributions as set forth below. Because the Monitor is not being specially compensated for these services, and these services are outside the normal duties of the Monitor, he shall not be liable for any action or inaction arising from his appointment as Monitor, other than actions involving fraud.

4. Defendants shall make their required restitution payments under this Order in the name of "Heierle and INH Settlement Fund" and shall send such restitution payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's, or bank money order to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606, under a cover letter that identifies Defendants and the name and docket number of the proceeding.

5. Defendants shall simultaneously transmit copies of the cover letter and the form of payment to (a) Director, Division of Enforcement, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581, and (b) Chief, Office of Cooperative Enforcement, at the same address.

6. The Monitor shall oversee Defendants' Restitution Obligation, and shall have the discretion to determine the manner of distribution of funds in an equitable fashion to participants or may defer distribution until such time as it may deem appropriate. In the event that the amount of restitution payments to the Monitor are of a de minimis nature such that the Monitor determines that the administrative costs of the making a restitution distribution to participants is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments,

which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments as set forth in Section II.C, below.

       7. Defendants shall execute any documents necessary to release funds that he has in any repository, bank, investment or other financial institution wherever located, in order to make partial or total payment toward the Restitution Obligation.

       8. To the extent that any funds accrue to the U.S. Treasury as a result of the Restitution Obligations, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth in paragraph 6 of this Section.

       9. Pursuant to Fed. R. Civ. P. 71, pool participants are explicitly made intended third-party beneficiaries of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the restitution which has not been paid by Defendants.

**C. CIVIL MONETARY PENALTIES**

IT IS FURTHER ORDERED that:

       1. Defendants shall each pay a civil monetary penalty in the amount of $3,000,000, plus post judgment interest (the "CMP Obligations").

       2. Post-judgment interest on the CMP Obligations shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

       3. Defendants shall pay their CMP Obligations by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made by other than electronic funds transfer, Defendants shall make the payment payable to the Commodity Futures Trading Commission and send to the following address:

    Commodity Futures Trading Commission

    Division of Enforcement

    Attention: Marie Bateman – AMZ-300

    DOT/FAA/MMAC

    6500 South MacArthur Boulevard

    Oklahoma City, OK 73169

    Telephone: 405-954-6569

4. If the payment is to be made by electronic funds transfer, the paying Defendant shall contact Marie Bateman or her successor at the above address to receive payment instructions and shall fully comply with those instructions. Defendants shall accompany the payment of the penalty with a cover letter that identifies the paying Defendant and the name and docket number of this proceeding.

5. Defendants shall simultaneously transmit copies of the cover letter and the form of payment to (a) Director, Division of Enforcement, U.S. Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581, and (b) the Chief, Office of Cooperative Enforcement, at the same address.

6. Any acceptance by the Commission of partial payment of Defendants' CMP Obligations shall not be deemed a waiver of the respective requirement to make further payments pursuant to this Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

**D. PRIORITY OF MONETARY PENALTIES AND PARTIAL PAYMENTS**

1. All Payments by Defendants pursuant to this Order shall first be applied to satisfaction of the Restitution Obligation, consistent with the authority granted the Monitor above. After satisfaction

-17-

of the Restitution Obligation, payments by Defendant pursuant to this Order shall be applied to satisfy Defendants' CMP Obligations.

2. Any acceptance by the Commission of partial payment from Defendants of Defendants' Restitution Obligation and/or CMP Obligations shall not be deemed a waiver of Defendants' obligations to make further payments pursuant to this Order, or a waiver of the Commission's right to seek to compel payment from Defendants of any remaining balance.

**E. MISCELLANEOUS PROVISIONS**

IT IS FURTHER ORDERED THAT:

1. Prohibition on Transfer of Funds: Defendants shall not transfer or cause others to transfer funds or other property to the custody, possession or control of any other person for the purpose of concealing such funds or property from the Court, the Plaintiff or any officer that may be appointed by the Court.

2. Partial Lifting of Freeze: Notwithstanding any order entered in this proceeding freezing Defendants' assets and/or prohibiting Defendants' transfer of funds or other property, such assets, funds, or property may be used to satisfy Defendants' Restitution Obligation and CMP Obligation as set forth above.

3. Lifting of Freeze: Upon full satisfaction by Defendants of their Restitution Obligation and CMP Obligations as set forth above, any order entered in this proceeding freezing Defendants' assets and/or prohibiting Defendants' transfer of funds or other property shall be lifted.

4. Notices: All notices required to be given by any provision in this Order shall be sent by certified mail, return receipt requested, as follows:

Notice to Commission: Kevin S. Webb

Commodity Futures Trading Commission

1155 21st Street, NW

Washington, DC 20581

All such notices to the Commission shall reference the name and docket number of this proceeding.

5. Invalidation: If any provision of this Order or the application of any provision or circumstance is held invalid, the remainder of this Order, and the application of the provision to any other person or circumstance, shall not be affected by the holding.

6. Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this case to assure compliance with this Order and for all other purposes related to this action.

DONE AND ORDERED in Chambers at Miami, Florida, this 18th day of December, 2008.

_____

FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record